IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAYMOND ONWARD BOLT,

    Petitioner,

v.

MARK NOOTH,

    Respondent.

Case No. 3:12-cv-01660-MO

OPINION AND ORDER

Steven T. Wax, Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Assault and Attempted Murder. For the reasons that follow, the Petition for Writ of Habeas Corpus (#2) is denied.

## BACKGROUND

On June 19, 2008, the Lane County Grand Jury indicted petitioner on one count of Assault in the First Degree and one count of Attempted Murder after he stabbed his girlfriend with a butcher knife following an argument.

On October 20, 2008, two days before his trial was scheduled to begin, petitioner attempted to commit suicide while in custody in the Lane County Jail. Petitioner was transported to the Sacred Heart Medical Center where he informed medical staff that, for the past two months, he had been hearing voices commanding him to kill himself. Respondent's Exhibit 111, p. 1. Petitioner was examined, treated, and returned to the Lane County Jail where he was put on suicide watch with scheduled checks every 15 minutes. *Id* at 2-3.

The next day, October 21, 2008, petitioner appeared for the "ready call" hearing before the Honorable Maurice K. Merten to address any final pretrial issues. During that hearing, petitioner's trial attorney filed a motion to withdraw. The motion was based upon counsel's representation that petitioner refused to communicate with him or the defense investigator, and that the

2 - OPINION AND ORDER

attorney-client relationship had broken down to the point where counsel felt he could no longer represent petitioner effectively at trial. Respondent's Exhibit 110, pp. 2-3. When the court asked petitioner for his comment, the following ensued:

| | |
|---|---|
| Petitioner: | I uh – I don't want him as an attorney. |
| Court: | Why? |
| Petitioner: | Because what's – I don't' know. I um – I don't even want to be alive no more. I don't know. |

* * *

| | |
|---|---|
| Court: | Do you know what you want to do with this case, Mr. Bolt? |
| Petitioner: | I don't want to be alive. No. |

* * *

| | |
|---|---|
| Def. Counsel: | I am concerned about his mental well being. It's obvious to me that he, at this point, isn't capable of cooperating. In a trial or basically anything else. So I guess in addition to my motion to withdraw, I would request a motion to postpone for a mental examination. First time I've had a client just refuse to talk to me period and can't represent him that way very well. |

* * *

| | |
|---|---|
| Court: | Mr. Bolt, why won't you talk to your lawyer? |
| Petitioner: | Um, I got – her brother, her youngest brother, has given me a hot shot when I came in. And her brother Shane threatened to kill my daughter if she got my stuff. Went to get my stuff when I couldn't get it. And – and I got messages already inside the jail, you |

3 - OPINION AND ORDER

                        know, I need to do this or not – or not come out so I don't even know if my daughter's okay now.

Court:         Why won't you talk to your lawyer?

Petitioner:    He don't know nothing about it. I've tried to ask for police involvement because of them threatening my family and myself and he won't bring no police in. He told me he don't feels – it will let it hurt – it will hurt their case to talk to them.

Court:         Do you have a clue as to what he's talking about?

*Id* at 3-5.

The prosecutor had "no idea" what petitioner was talking about, and defense counsel indicated that there had been threats made from the victim's brother to petitioner's daughter. At this point, Judge Merten noted that nobody had made a claim that petitioner was unfit to proceed by virtue of mental disease or defect, and he was denying the motion to withdraw and would not allow a continuance, but wanted petitioner to have a mental evaluation that day. *Id* at 6. Judge Merten was of the opinion that if petitioner was found fit to proceed, he would simply have to suffer the consequences of his decision not to cooperate with his defense team. *Id* at 7. The court issued a written order for petitioner to have a mental health evaluation conducted at the Lane County Jail. The Order specifically provided that "The Court finds that the Court has reason to doubt defendant's fitness to proceed

4 – OPINION AND ORDER

by reason of incapacity, and has ordered an evaluation." Respondent's Exhibit 133.

The mental evaluation Judge Merten ordered did not take place. Instead, approximately two hours after Judge Merten ordered the evaluation, petitioner appeared before the Honorable Charles Carlson for another change of plea hearing. Respondent's Exhibit 104. Judge Carlson noted that there was a pending order for a mental health evaluation:

> Court:  Let me ask you this. I also note there is an amended order for the defendant to have a mental health evaluation done at the jail, and it's signed by Judge Merten...it looks like today at 11:30 a.m. Having just gotten this file, I'm not sure how all this came about, but this morning the deal you've come forward with, there's no issue here regarding Mr. Bolt's fitness.
>
> Def. Counsel: Yes.

*Id* at 2.

The court went through some preliminary matters with the lawyers, then inquired as to petitioner's understanding of the proceedings:

> Court:  Alright. You understood all these negotiations and such that you've had here this morning?
>
> Petitioner:  Most of them.
>
> Court:  Pardon me, this afternoon I should say. Were you following all of this?
>
> Petitioner:  Right.

5 - OPINION AND ORDER

| | |
|---|---|
| Court: | You're not having any difficulty understanding or communicating with your attorney? |
| Petitioner: | We're trying to work on it. |
| Court: | Alright. I just wanted to make sure that you understand and appreciate what's going on. And some issues have been raised with regard to your understanding with how things are proceeding. You're telling me you understand these negotiations, and this is what you've decided to do after talking with your attorney, is that correct? |
| Petitioner: | Yes. |
| Court: | Alright, and have you through this plea petition that has just been handed to me carefully with your attorney and discussed it? |
| Petitioner: | We was just trying to work on that, yes. |
| Court: | Alright. And that's your signature on there? |
| Petitioner: | Yes. |
| Court: | Alright. And again, any questions you have about this, you talked to your attorney about, is that right? |
| Petitioner: | Yes. |
| Court: | Alright, let me ask you because I need to make sure you understand, sir, the rights you're giving up before we go forward with the change of plea. By taking this course, you're giving up certain fundamental rights. You're giving up your right to remain silent about testifying against yourself. You're giving up your right to a jury trial. You're giving up your right to be represented by an attorney and have one appointed if you could not afford one. |

6 - OPINION AND ORDER

|              |              |
|--------------|--------------|
|              | You're giving up your right to confront your accusers and cross-examine the state's witnesses or call witnesses on your own behalf. You're giving up your right to require the State to prove these two charges against you by beyond a reasonable doubt, the standard in front of a jury. You understand you're giving up those rights if you enter a Guilty plea? |
| Def. Counsel: | You'd have to say yes on that. |
| Petitioner:  | Yes. |
| Court:       | I'm required by federal law to tell you that if you're not a U.S. citizen, a criminal conviction could result in deportation or refusal of naturalization. If you are a U.S. citizen, that has no application. Do you understand that also? |
| Petitioner:  | I think so. |
| Court:       | Alright. Other than the negotiations the attorneys just told me about and are discussed in this plea petition, has anybody promised you anything else to get you to do this? |
| Petitioner:  | I was kind of confused because we had a settlement with Rasmussen, and he was doing 165 months. So it doesn't make sense why it went up at this point. I guess that's not for me to know. |
| Court:       | Well sir, I just want to make sure there is no other promises. You heard what we just said in here today. Are those the terms that you agreed to with your attorney after talking to him? |
| Petitioner:  | Yes. |
| Court:       | I just want to make sure nobody...that you're doing this voluntarily and that |

|  |  |
|---|---|
| | nobody has threatened you in any way. Has anyone threatened you? |
| Petitioner: | I've been trying to get him to look at that for a couple of months now. One of the State's witnesses has threatened me and threatened my family, and I just finally got my daughter that was threatened to talk about it. And I'm just worried if I don't...being I can't get nobody, no police to look into it, that if I don't then something bad is going to happen to her. |
| Court: | Well, I'm not going to go forward with sentencing. Sir, I need to be convinced that this is a voluntary decision that you've made. And I'm not going to accept any change of plea unless it's completely voluntary, it's an informed consent, it's the discussions you've had with your attorney, and you've had enough time to talk to your attorney. And I'm not going to accept any plea that's under any time of, as you view, a threat in any manner. So I'm not going to accept any change of plea. |
| Petitioner: | I don't want them to have my daughter. I just want my good-time if I can get it, whatever you decide. |
| Court: | Well, I'm not going to go forward here today. Counsel, you need to talk to him. If you want to reset this matter for tomorrow, that's fine. I've expressed my views that I would agree to be bound, but I want Mr. Bolt to have some chance to talk to you about this so it's a free and voluntary decision on his part. |
| Def. Counsel: | Could we just have five minutes right now, Your Honor? |
| Court: | Well, we don't have to transport anybody today. |

8 - OPINION AND ORDER

Prosecutor:     I don't have a problem with that. The State's patience is starting to wear thin with this. I mean, we're prepared for trial. I'm going to ask for 240 months post trial in this case. So Mr. Bolt needs to realize the time is now if he wants to accept this deal. If I have to call in witnesses tomorrow, this is not going to be an offer on the table at 9:30 in the morning. So he just has to understand that. We have doctors that are coming in to testify.

Def. Counsel:   I understand your position.

\* \* \* \* \*

Court:          We're back on the record.

Def. Counsel:   When the Court asked about the question about has anybody made any threats or promises, Mr. Bolt had in mind what we believe was an actual threat made to his daughter early on in the case about not trying to pick up some of his property. And that's a separate issue than whether any threats or promises have been made against him in relation to this agreement and whether he takes it or not. He agrees that there are no threats or promises other than what is contained in the petition.

Court:          Is that correct, Mr. Bolt?

Petitioner:     Yes, sir.

Court:          Alright, so you've made this decision voluntarily and you talked to your attorney about it before you made the decision about your case?

Petitioner:     Yes.

Court:          Have you had enough time for your discussions with your attorney?

9 - OPINION AND ORDER

Petitioner: Yes.

*Id* at 5-8.

The court then proceeded to ask a series of questions to which petitioner simply responded with one-word answers, either "yes" or "guilty." The court accepted petitioner's plea of guilty as to Assault in the First Degree and Attempted Murder for which he ultimately received a 180-month prison sentence, the maximum contemplated by the plea agreement. Respondent's Exhibits 101, 103.

Petitioner did not take a direct appeal, but he did file for post-conviction relief ("PCR") in Malheur County where the PCR trial court denied relief on his claims. Respondent's Exhibit 142. On appeal, petitioner pursued a single claim: whether his trial attorney was ineffective for failing to ensure that he entered his guilty pleas knowingly and voluntarily. Respondent's Exhibit 143. The Oregon Court of Appeals affirmed the PCR trial court's decision without issuing a written opinion, and the Oregon Supreme Court denied review. *Bolt v. Nooth*, 250 Or. App. 144, 281 P.3d 685, *rev. denied* 352 Or. 341, 288 P.3d 275 (2012).

Petitioner filed this federal habeas corpus action on September 13, 2012 where he continues to press his claim that his attorney was constitutionally ineffective for failing to ensure that he entered his guilty pleas in a knowing and voluntary fashion. Respondent ask the court to deny relief on this claim

because the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but

11 - OPINION AND ORDER

unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

## II. Analysis

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, a petitioner who has pled guilty to an offense must demonstrate that there is a reasonable probability

12 - OPINION AND ORDER

that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

Petitioner's defense attorney submitted an affidavit for the PCR trial court's consideration. He noted that the prosecuting attorney:

> 8. . . . informed me and Mr. Bolt that the offer with the 180 month lid would expire that day, and Mr. Bolt was aware of the expiration date. Later that same morning, Mr. Bolt contacted me through a jail deputy, who relayed a message from Mr. Bolt that he now wanted to accept the plea offer. On Tuesdays and Fridays, the only possible slot for an afternoon hearing after the morning appearances was at 1:30 pm, which is the time I arranged.
>
> 9. The plea hearing had to occur in front of a different Judge because that was the only time and Judge available that day for Mr. Bolt to accept the plea deal before it expired. At the plea hearing, I had additional time to consult with Mr. Bolt off the record before his acceptance of the plea deal. The jail never told me that Mr. Bolt was on suicide watch. From my own personal observations of Mr. Bolt, he appeared sharp and lucid, and I had no reason to doubt his competency to evaluate and accept the plea deal.
>
> * * * * *
>
> 13. . . . Prior to the plea hearing, Mr. Bolt and I discussed the pending evaluation

13 - OPINION AND ORDER

>    order before his decision to accept the plea deal. Mr. Bolt told me that he did not want to wait for an evaluation, and wanted to accept the State's offer before it expired. I asked Mr. Bolt if he had any problem understanding the proceedings, and he was adamant that no problems existed and he was completely sharp. From my own observations at the plea hearing, I confirmed that he did not appear to need an evaluation, and Mr. Bolt told me that my impressions were accurate.
>
> 14. The day of sentencing, Mr. Bolt told me that he absolutely did not want to go to trial, that he had no complaints about my representation of him, that he never really wanted to go to trial and just wanted a better deal, and that he might try post-trial to get a better deal.

Respondent's Exhibit 140.

The PCR trial court determined that petitioner's claim lacked merit because: (1) counsel saw no evidence of incompetency; (2) petitioner was focused on accepting the plea offer before it expired; (3) petitioner did not demonstrate any confusion, told the court he understood the proceedings, and he never contradicted his attorney's representation that his client understood the proceedings; and (4) petitioner demonstrated his competency when he made a lengthy statement at sentencing. Respondent's Exhibit 142.

The record does reveal confusion on petitioner's part. Petitioner's answers to Judge Merten's questions were sufficiently troublesome that the court would not accept petitioner's pleas, and Judge Carlson also initially refused to accept petitioner's pleas.

14 - OPINION AND ORDER

However, counsel was placed in a very difficult position where: (1) the State's plea offer was due to expire that same day; (2) the prosecutor specifically indicated during the hearing with Judge Carlson that he was unwilling to extend the offer's deadline; and (3) petitioner was eager to accept the offer before its expiration. Under these circumstances, it may have been preferable for Judge Carlson: (1) to attempt to have the competency evaluation performed immediately to allow petitioner time to enter his plea if the evaluation showed him to be competent to do so; (2) to more thoroughly explore the issue of petitioner's competency during the hearing and more fully inquire of petitioner regarding the reasons he wished to plead guilty and his understanding of the rights he was foregoing; or (3) to perhaps even ask the State for its cooperation in extending the plea offer by just one more day in order to accommodate Judge Merten's order for a competency evaluation. However, this is not what occurred and there is no due process claim before this court for its consideration.

But even assuming, without deciding, that counsel's performance fell below an objective standard of reasonableness when he allowed petitioner to plead guilty in the face of an expiring plea offer where there had been some concern about his competency to plead, petitioner must also prove that he was prejudiced by counsel's deficient representation. As previously noted, the test for prejudice in cases involving guilty pleas is whether petitioner

15 - OPINION AND ORDER


would have rejected the State's plea offer and insisted on going to trial had be been adequately represented by counsel.

There is no indication anywhere in the record that petitioner has ever expressed a desire to proceed to trial. He also makes no showing that he had any defense to present at trial, or any other reason why he would have foregone the State's plea offer and proceeded to a trial where he would have been convicted and subjected to a harsher sentence. To the contrary, the record indicates petitioner assaulted and stabbed his girlfriend and simply had no defense to the resulting charges. Indeed, at his sentencing hearing, petitioner acknowledged what he had done and apologized for it. Respondent's Exhibit 105, pp. 11-13.

Petitioner nevertheless asserts that he suffered prejudice because, due to counsel's performance, he was not able have his competency evaluated on the day in question and such an evaluation is no longer possible due to the passage of time. While it may no longer be possible to assess petitioner's competency on the day in question, this fact does not carry petitioner's burden of proving that had counsel acted differently, petitioner would have insisted on proceeding to trial. As such, the PCR trial court's conclusion that petitioner is not entitled to relief on his ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

///

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) is denied. The court issues a Certificate of Appealability as to whether petitioner suffered from the ineffective assistance of counsel with respect to the entry of his guilty pleas.

IT IS SO ORDERED.

DATED this 24th day of January, 2014.

_____
Michael W. Mosman
United States District Judge

17 - OPINION AND ORDER